**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 08-cv-00179-WJM-KLM

GLEN LLEWELLYN,

    Plaintiff,

v.

OCWEN LOAN SERVICING, LLC., and
NOMURA CREDIT AND CAPITAL, INC.,

    Defendants.

---

**ORDER GRANTING MOTION *IN LIMINE***

---

    Defendants Ocwen Loan Serving, LLC, and Nomura Credit and Capital, Inc. (together, "Defendants") move *in limine* to exclude any evidence or testimony from Plaintiff Glen Llewellyn ("Llewellyn") regarding (a) financial losses allegedly caused by Defendants or (b) physical symptoms Llewellyn attributes to the emotional distress allegedly caused by Defendants. (ECF No. 331.) For the reasons stated below, the motion is granted.

## I.  BACKGROUND

    This is a lawsuit for alleged violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2. The facts of this case are lengthy and have been described elsewhere. (*See, e.g.*, ECF No. 266.) For present purposes, the following suffices.

    In June 2011, the Court ruled on Defendants' motion for summary judgment. (*See id*.) The Court there concluded that Llewellyn had provided evidence sufficient to go to a jury on whether Defendants had violated FCRA between December 5, 2007

(when Defendants concluded that Llewellyn's loan should have been classified as paid-in-full rather than in default) and February 15, 2007 (when Defendants requested that credit reporting agencies remove the negative information Defendants had provided about Llewellyn). (*Id*. at 16–17.) However, the Court concluded that summary judgment for Defendants was appropriate because Llewellyn failed to support any actual damages, which included both direct economic damages (such as business losses) and emotional distress damages. (*Id*. at 20–26.)

Llewellyn appealed and the Tenth Circuit affirmed except with respect to emotional distress damages. *See Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173 (10th Cir. 2013). Specifically, the Tenth Circuit held that Llewellyn's declaration describing his emotional distress was sufficiently specific and non-conclusory to merit a trial. *Id*. at 1182–83. Thus, what remains for trial in this case is (a) whether Defendants violated FCRA by their conduct between December 5, 2007 and February 15, 2007, and if so, (b) whether Llewellyn suffered emotional distress caused by Defendants' FCRA violation.

The Tenth Circuit further noted, however, that Llewellyn asserted various physical symptoms that he attributed to his emotional distress. *Id*. "At trial," the Tenth Circuit said, "[Llewellyn]'s ability to recover for the various physical symptoms he describes will turn, in part, on his ability to establish that the physical symptoms are manifestations of the emotional distress he experienced. . . . [Llewellyn]'s ability to seek damages for the . . . physical symptoms will be more appropriately addressed by the district court through pre-trial and trial motions." *Id*. at 1183 n.3.

## II.  ANALYSIS

Defendants now move *in limine* to exclude all testimony and evidence related to two subjects: (1) Llewellyn's economic damages (other than emotional distress damages), and (2) Llewellyn's physical symptoms that he claims were caused by his emotional distress.  (ECF No. 331 at 2.)  Llewellyn concedes the first category of evidence is no longer admissible.  (ECF No. 342 at 1.)  Accordingly, the Court turns to the second category of evidence.

In summary judgment proceedings, Llewellyn submitted a declaration asserting that Defendants' alleged conduct caused a flare-up in his preexisting Crohn's Disease, as well as other symptoms:

> In 1979, I joined the United States Marine Corps ("USMC").  While I was serving my country, through reasons unknown to me, I developed Crohn's Disease.  Crohn's Disease is an autoimmune disease that affects the digestive tract and, specifically, the intestine.  The disease causes inflammation and severe pain in the abdomen, including diarrhea and other intestinal problems. . . .  My doctors have informed me that stress and anxiety worsen Crohn's Disease and can cause flare-ups of this disease.
>
> * * *
>
> When I came to Colorado, I went to work with my brother at his construction business.  Because I was making good money with my brother . . . my stress level decreased dramatically.  As a result of this decreased stress, I no longer had any issues with my Crohn's Disease (i.e. no trouble with my bowel movements, no intestinal discomfort, and no other symptoms). . . .
>
> * * *
>
> Due to [Defendants] ruining my credit, both my finances and my health began to rapidly deteriorate.  I began experiencing increased fatigue daily to the point where it became a chore

3

> to even get out of bed. I developed blurred vision, rashes and itching skin on my torso and legs, and painful joint inflammation. I also began to experience numbness in my feet, hands, and legs, shortness of breath, and constant thirst. . . .
>
> At about that same time, the symptoms of my Crohn's Disease, which I knew well, returned with great force. I started to again experience abdominal pain with stomach and intestinal cramping, along with bloating, constipation, diarrhea, and reoccurring nausea. I also started having drenching night sweats, panic attacks, anxiety, severe kidney pains, horrible joint pains at my wrists, neck, hips, jaw, spine, and knees, and low-grade fevers and chills. . . . The many threats I received in writing from [Defendants'] lawyers . . . also caused me great stress and anxiety.
>
> . . . I felt completely helpless as to how to manage my crumbling personal real estate investments, and felt as though everything was "closing in." . . .
>
> * * *
>
> I began to suffer extreme nervousness and anxiety, including anxiety attacks. . . . This is what happened, and the reason I suffer so many health problems today.

(ECF No. 251-8 ¶¶ 2, 4, 6, 7, 8, 11.)

The Tenth Circuit held, and Defendants do not argue to the contrary, that Llewellyn's descriptions of night sweats, panic attacks, and anxiety, and of his emotional state generally, are permissible evidence of his alleged emotional distress. *Llewellyn*, 711 F.3d at 1183 n.3. Defendants only challenge Llewellyn's intended testimony and evidence regarding the physical symptoms he attributes to emotional distress, including the claims of blurred vision, rashes, joint inflammation, numbness, a Crohn's Disease flare-up (and its attendant symptoms), kidney pains, and fevers. (ECF No. 331 at 5–6.) Defendants claim, under Federal Rule of Evidence 702, that the

connection between those symptoms and Llewellyn's alleged emotional distress requires expert medical testimony which Llewellyn has refused to proffer. (*Id*. at 6–7.) Llewellyn responds that he "has no funds to retain an expert witness," and claims that the Tenth Circuit's opinion permits him to testify about both his physical and emotional symptoms. (ECF No. 342 at 1, 2.)

Courts have allowed lay testimony about medical causation in cases where causation is fairly obvious. For example, in a prison brutality case, the Seventh Circuit permitted a prisoner to testify about the connection between being beaten by a prison guard and the pain he subsequently felt: "No expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations. Here, the cause of [the prisoner's] pain was perfectly clear: [the guard] beat him." *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009) (citation omitted). But the court went on to note a scenario where the causal connection might not be so obvious: "Had [the prisoner] claimed that [the guard] never touched him but merely denied him access to medical care for several days, and that this delay in treatment exacerbated his back problems, we might require [the prisoner] to support his theory of causation with some objective medical evidence." *Id*.

Llewellyn's case falls on the latter side of that line. Various courts have noted that whether a stressful incident caused a flare-up in a preexisting condition is not within a jury's competence to judge without expert causation testimony. *See, e.g.*, *Xodus v. The Wackenhut Corp.*, 626 F. Supp. 2d 861, 865 (N.D. Ill. 2009); *Kiesz v. Gen. Parts, Inc.*, 2007 WL 963489, at *15 (D.S.D. Mar. 28, 2007). Even apart from the preexisting

condition context, medical causation is usually a matter for expert testimony.  *See, e.g.*, *Gidley v. Oliveri*, 641 F. Supp. 2d 92, 106 (D.N.H. 2009); *Hargis v. Atl. Cnty. Justice Facility*, 2014 WL 1713461, at *7 (D.N.J. Apr. 28, 2014); *Henry v. O'Charley's Inc.*, 2013 WL 786417, at *7 (W.D. La. Mar. 1, 2013); *cf. Montoya v. Sheldon*, 286 F.R.D. 602, 614 (D.N.M. 2012) ("A treating physician's opinions regarding diagnosis of a medical condition is almost always expert testimony, because diagnosis requires judgment based on scientific, technical, or specialized knowledge in almost every case.").

Although Llewellyn believes medical causation is something the Tenth Circuit would allow him to testify about, Llewellyn ignores the Tenth Circuit's instruction that his "ability to seek damages for the . . . physical symptoms will be more appropriately addressed by the district court through pre-trial and trial motions." *Llewellyn*, 711 F.3d at 1183 n.3.  A pre-trial motion is precisely what Defendants have presented.  Having considered it, the Court finds it well-founded.  In the absence of expert testimony regarding causation, Llewellyn will not be permitted to present testimony or evidence of blurred vision, rashes, joint inflammation, numbness, a Crohn's Disease flare-up (and its attendant symptoms), kidney pains, fevers, or any other physical condition he attributes to the emotional distress allegedly caused by Defendants.  Llewellyn remains free to testify and present evidence about, *e.g.*, night sweats, panic attacks, anxiety, a feeling that everything was "closing in," and similar manifestations of emotional distress—those for which the connection between stimulus and response is within the common experience of a jury.

### III.  CONCLUSION

For the reasons stated above, Defendants' Motion in Limine (ECF No. 331) is GRANTED.

Dated this 5th of May, 2015.

BY THE COURT:

_____
William J. Martinez
United States District Judge